## Thomas H. Kelly, Defendant in Error, v. Supreme Court of the Independent Order of Foresters, Plaintiff in Error.

### Gen. No. 20,085.    (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed and remanded. Opinion filed December 8, 1915.

### Statement of the Case.

Action by Thomas H. Kelly, plaintiff, against the Supreme Court of the Independent Order of Foresters, defendant, in the Municipal Court of Chicago, to recover on a certificate of insurance. To reverse a judgment for plaintiff for $500, defendant prosecutes this writ of error.

The defendant is a fraternal insurance society, made up of the Supreme Court of the order and subordinate courts. The defendant issued a certificate to the plaintiff for the sum of $1,000, and the beneficiary therein named was Carrie McLaughlin, plaintiff's mother. It provided, among other things, that in case the plaintiff was totally and permanently disabled by reason of accident (of which disability the executive council was to be the sole judges), one-half of the certificate—$500 —should be paid to Kelly. The by-laws, which were made a part of the certificate, defined total disability to be that the member be "forever totally unfit to follow or direct any employment, labor, trade, occupation, business or profession." Certain dues and assessments were to be paid by the member each month, with

a period of thirty days' grace, and it was provided that upon failure to pay within the period of grace, the member should *ipso facto* immediately stand suspended; that in case of total disability, certain proofs should be made, and that no legal action should be commenced until all remedies provided in the constitution were exhausted, and that any legal proceeding must be brought within six months after final action of the chief ranger or executive council.

Kelly continued a member in good standing until November 30, 1909, although shortly prior thereto, October 20, 1909, he was reinstated, having been theretofore suspended for nonpayment of dues. The defendant contended that on January 1, 1910, Kelly was again suspended for nonpayment of the December dues. The evidence tended to show that the plaintiff either in January or the first part of February, 1910, received a notice from John Hauseman that he had been suspended. Hauseman was the financial secretary of Court Weidner, having held such position since 1899. His duties were to collect dues and assessments and forward the same to the High Court. He and the plaintiff had been acquaintances for more than ten years.

There was a conflict in the evidence as to what took place at that time, Kelly's version being that he asked Hauseman what the notice meant; that Hauseman said he had been suspended for nonpayment of dues, to which Kelly replied that his mother, Mrs. McLaughlin, had sent the dues by mail during the latter part of December, 1909, and which dues Hauseman stated he had not received; that thereupon Kelly offered to pay the dues, but Hauseman refused to accept the money, stating that he would take the matter up with the postal authorities; that Hauseman gave him no application for reinstatement.

Hauseman's contention was that he told Kelly he was suspended; that Kelly told him his mother had

sent the money in December; that he, Hauseman, had not received the same; that he, Hauseman, said he would take the matter up with the postal authorities and notify Kelly; that Kelly did not offer any money at that time, but stated he was out of work and wanted him to wait for a few weeks; that he, Hauseman, said he could wait as long as he pleased, but not more than ninety days; that he then gave Kelly a blank application for reinstatement, which Kelly signed and took with him, and was to return when he was ready. Kelly denied this and stated that he signed the application at the hospital, as hereinafter noted. A court reporter testified that on a former trial, Kelly testified that at that meeting he received an application for reinstatement, and that he signed the same. The testimony also shows that nothing further was done in the matter until March 15, 1910, when Kelly's mother called on Hauseman where he was employed and said she came to pay her son's dues, and to have him reinstated; that, although she had paid the dues on December, she would pay them again. She returned the application blank, signed by her son, to Hauseman. Hauseman took the money and the application. The application stated that the money was received and held by Hauseman as trustee until action was taken by the head office in Toronto, and that Kelly had been suspended for nonpayment of dues for January, February, March and April, 1910. Hauseman then wrote in Kelly's pass book, which Mrs. McLaughlin had, that the December dues were then paid. He also gave her a receipt which acknowledged payment of $8.52 from Kelly for the months of January to May, "to apply on reinstatement." At that time nothing was said by Mrs. McLaughlin that her son had been severely injured the day before.

Hauseman sent the application for reinstatement which he received from Mrs. McLaughlin on March 15, 1910, to Toronto. It was returned to him on account

of its not being dated. Thereupon, Hauseman mailed a new application blank to Kelly. This was on or about April 3rd. He was then notified by Mrs. McLaughlin that Kelly had been injured on March 14th, and was in the hospital, and she requested Hauseman to go and see him there, which he did. Kelly was in bed at the hospital, and signed a new application blank for reinstatement. Hauseman stated that he thought nothing could be accomplished in the way of reinstatement, but that he would see what could be done. He then wrote to the High Court, and was advised by it that under all the circumstances, Kelly could not be reinstated, and liability was denied.

Mrs. McLaughlin appears to have had considerable experience with similar organizations. She had been financial secretary of an order for seventeen years. She stated that the reason she did not tell Hauseman when she paid the money that her son had been injured was that she did not think it was necessary. The evidence tended to show that Kelly or his mother had previously, on a few occasions, mailed money to Hauseman in payment of dues. The mother testified that during the latter part of December, 1909, she placed three $1 bills in an envelope addressed to "John Hauseman, 2419 Forty-third, north of Fourth avenue, Chicago, Illinois"; properly stamped and sealed the same, and on the back thereof placed her name and address so that it might be returned in case of non-delivery; and that she then mailed the letter. Hauseman testified that he did not receive the letter or money, and that his address was "4047 North 43rd avenue."

The defendant having denied liability, and refusing to pay, this suit was brought October 5, 1910. The affidavit of merits stated that the defense was that the plaintiff had failed to pay dues and assessments falling due prior to January 1, 1910, and was suspended, and that the certificate was void. The case was tried

before the court and jury on February 4, 1913. The jury found the issues against the plaintiff. The court afterwards granted a new trial. On September 22, 1913, by leave of court, the defendant filed an additional affidavit of merits, stating, among other things, that the plaintiff had failed to file notice, as required, of his disability; that the suit was not brought within six months from the date of his injury, and that he was not totally disabled. The case was tried before the court and jury, and a verdict of $500 was returned in favor of the plaintiff, and judgment entered thereon.

CHARLES F. VOGEL, for plaintiff in error.

MORSE IVES and CHARLES C. BODENSTAB, for defendant in error.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

## Abstract of the Decision.

**1.** INSURANCE, § 432*—*what constitutes total disability under accident insurance policy.* Total disability, as used in an accident insurance policy, does not mean absolute physical disability to perform any kind of work.

**2.** INSURANCE, § 898*—*insufficiency of evidence to show payment of dues.* In an action to recover on a certificate of accident insurance, where at the time of the accident sought to be recovered plaintiff had been suspended by defendant, a fraternal organization, for non-payment of dues as required by the certificate, and where plaintiff claimed that the dues in question had been sent by mail to defendant's agent, a judgment for plaintiff *held* not sustained by the evidence, it appearing by a preponderance thereof that the letter containing such dues was not sent.

**3.** INSURANCE, § 884*—*when evidence that member of fraternal organization signed request for reinstatement admissible.* The fact that a member of a fraternal organization who has been suspended signs a request for reinstatement is competent on the question of whether the suspension was lawful, but such evidence is not conclusive of the issue.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. INSURANCE, § 804*—*when beneficiary not estopped to assert that suspension was unlawful.* The fact that a member of a fraternal organization, who has been suspended, has signed a request for reinstatement does not estop him from asserting that such suspension was unlawful.

5. INSURANCE, § 854*—*when action on mutual benefit certificate not prematurely brought.* If when a claim is presented against defendant, a fraternal organization, it at first denies liability, an action brought without exhausting certain remedies as required by defendant's by-laws is not prematurely brought, although such by-laws are expressly made part of the contract, and though plaintiff is expressly required thereby to exhaust such remedies before bringing suit, for the reason that in such case defendant is precluded from setting up the provisions of such by-laws as a defense to the action.